**CITY OF AURORA, COLORADO,**
Movant,

v.

**The CLASSIC SYNDICATE, INC. and The Classic Fire & Marine Insurance Company, Respondents.**

No. 96 C 5741.

United States District Court,
N.D. Illinois,
Eastern Division.

Nov. 26, 1996.

Frank K. Heap, Randy Joseph Curato, Bell, Boyd & Lloyd, Chicago, IL, for Respondents.

H. Wesley Sunu, Molly A. Griffin, Tribler, Orpett, Palmer & Crone, P.C., Chicago, IL, for Movant.

### OPINION AND ORDER

NORGLE, District Judge:

Before the court are the parties' cross motions to direct arbitration. For the follow-

ing reasons, the court grants the motion of the Movant and denies the cross motion of the Respondents.

## I. BACKGROUND

Both parties move the court to direct arbitration of an insurance coverage issue pursuant to the terms of an insurance policy. They disagree about which arbitrators should preside over the arbitration.

The City of Aurora, Colorado, ("Aurora") obtained excess liability insurance through the Illinois Insurance Exchange ("IIE") in a series of policies dating from 1986 through 1994. The underwriting risk for these policies was placed entirely with Classic Syndicate, Inc./Classic Fire & Marine Insurance Company ("Classic"). The relevant policy names the IIE as the insurer. As a matter of course, Aurora made claims for coverage under the policies to Classic's designated claims administrator.

In 1988, one of Aurora's former employees received a judgment against Aurora at trial for violations of his federal civil rights. Aurora then sought reimbursement from Classic.

Aurora states that, on July 15, 1996, after unsuccessful attempts at seeking reimbursement for the judgment payment from Classic, Aurora invoked the "binding arbitration clause" of the relevant insurance policy. The policy states, in relevant part:

> The Company and all Insureds under this policy agree that in the event of any difference arising between the Insured and the Company with reference to this policy, such difference will be referred to three disinterested arbitrators, one being chosen by the Insured, one chosen by the Company, and the third chosen by the two aforesaid arbitrators before they enter into arbitration.

(Aurora Mot. to Direct Arbitration Ex. A). Further, the policy provides:

> In default of any party hereto qualifying its arbitrator within four (4) weeks after receipt of written notice from the other party, requesting party may name both

arbitrators, and they shall proceed in all respects as above stipulated.

(Mot. to Direct Arbitration Ex. A). Endorsement 3 of the relevant policy states,

### COMPANY DEFINED

> Whenever used ..., the term "The Company" ... means the underwriting syndicate(s) of the Illinois Insurance Exchange listed on "Schedule A" attached to this policy.

(Reply.Ex. G.) Schedule A listed only Classic as an underwriter. The policy does not include a specific provision which dictates how an insured shall give notice to the syndicate that the insured is invoking the arbitration clause.

Aurora states that it invoked the arbitration clause through a written demand letter addressed to Classic's designated claims administrator, which named Richard P. Slivka ("Aurora Arbitrator I") as the initial arbitrator. Aurora sent a copy of the letter to general counsel for the IIE. Aurora further states that Classic's designated claims administrator received its letter on July 15, 1996.[1] Therefore, contends Aurora, Classic had until August 12, 1996, to name its choice of arbitrator. Classic did not do so. Accordingly, on August 13, 1996, Aurora named Daniel M. Fowler ("Aurora Arbitrator II") as the second arbitrator. It did so in a written letter which it faxed to both Classic's designated claims administrator and IIE's general counsel.

Later on August 13, 1996, Classic's attorney advised Aurora's attorney that Classic was appointing John Van Cleave ("Classic Arbitrator I") as the second arbitrator, and requested permission to forward to the relevant policies to Classic Arbitrator I. Aurora's attorney indicated that he did not object, provided that Aurora Arbitrator I also received the policies. Aurora's attorney advised Classic's attorney that Aurora had appointed Aurora Arbitrator II earlier that same day, and faxed Classic's attorney a copy of the letter doing so.

On August 14, 1996, Classic's attorney sent Aurora's attorney a copy of a letter to Classic

---

1. The date on which Aurora sent this letter is not apparent from the briefs.

Arbitrator I. That letter states, in part: "[Aurora] has designated [Aurora Arbitrator I] as their impartial arbitrator. [Classic] has designated, and you have accepted, as their impartial arbitrator." (Aurora Mot. to Arbitrate Ex. E.) That letter does not indicate in any way that Classic intended to dispute Aurora's invocation of the arbitration clause, or its choice of either Aurora arbitrator. Classic's attorney then mailed a letter to Aurora's attorney and Aurora Arbitrator I, indicating that Classic had appointed Classic Arbitrator I. Aurora's attorney received that letter on August 19, 1996.

Aurora argues that its two arbitrators are the only properly-designated arbitrators. It states that the arbitration clause requires Classic to receive notice from Aurora that Aurora invokes the arbitration clause. Aurora also states that it acted under a reasonable interpretation of the clause by giving that notice to Classic's designated claims administrator, the individual with which Aurora usually dealt at Classic. Aurora filed its motion, requesting that the court determine whether Aurora Arbitrator II or Classic Arbitrator I is the proper second arbitrator.

In response, Classic states that its designated claims administrator is not its designated recipient for notices of arbitration. Accordingly, states Classic, Aurora's July 15, 1996, letter to its designated claims administrator did not properly invoke the arbitration clause. Classic states that it did not receive, and its records do not reflect, notice of Aurora's invocation of the arbitration clause. Therefore, contends Classic, Aurora never notified the appropriate parties, and, thus, never properly invoked the arbitration clause.

Classic then states that, notwithstanding Aurora's failure to invoke the arbitration clause properly, the IIE (through Classic) opted to proceed with arbitration. Thus, when Classic's attorney advised Aurora's attorney that Classic was appointing Classic Arbitrator I on August 13, 1996, it was Classic which first properly invoked the arbitration clause. Since Aurora's attorney received Classic's letter appointing Classic Arbitrator I on August 19, 1996, Classic argues that Aurora had four weeks from that date (until September 16, 1996) to name the second arbitrator under the arbitration clause.

When Aurora did not do so, Classic appointed John Van Klee ("Classic Arbitrator II") on September 19, 1996. In a letter of that date, Classic's attorney first wrote to Aurora's attorney indicating that Classic disputed Aurora's method of invoking the arbitration clause. That letter states, in part, "Classic learned of the arbitration and designation from its 'claims' agent, where you apparently directed your notice." (Resp. at Ex. F.) Thus, argues Classic, its two arbitrators are the only properly designated arbitrators.

Following is a summary of the relevant dates in this matter:

7/15/96 Classic's designated claims administrator receives letter from Aurora, copying IIE's attorney, claiming to invoke the arbitration clause and name Aurora Arbitrator I.

8/13/96 Aurora faxes letter to Classic's designated claims administrator, copying IIE's attorney, stating that Classic has failed to timely name its arbitrator, and that Aurora names Aurora Arbitrator II as the second arbitrator.

8/13/96 Classic's attorney advises Aurora's attorney via telephone that Classic is appointing Classic Arbitrator I.

8/14/96 Classic's attorney sends letter to Classic Arbitrator I, advising of appointment, and copying Aurora's attorney.

8/19/96 Aurora's attorney receives letter naming Classic Arbitrator I.

9/19/96 Classic's attorney sends letter to Aurora's attorney, disputing Aurora's invocation for the first time, and naming Classic Arbitrator II.

## II. DISCUSSION

The Federal Arbitration Act ("FAA") "provides that written agreements to arbitrate controversies arising out of an existing contract 'shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.'" *Dean Witter Reynolds, Inc. v. Byrd,* 470 U.S. 213, 218, 105 S.Ct. 1238, 1241,

84 L.Ed.2d 158 (1985) (quoting 9 U.S.C. § 2). Contractual provisions for the appointment of arbitrators "shall be followed." 9 U.S.C. § 5. *Universal Reins. Corp. v. Allstate Ins. Co.*, 16 F.3d 125, 128 (7th Cir.1994). Under the FAA, federal courts must interpret arbitration agreements as they would any other private agreements—according to their terms. *Mastrobuono v. Shearson Lehman Hutton, Inc.*, 514 U.S. 52, ——, 115 S.Ct. 1212, 1214, 131 L.Ed.2d 76 (1995). Where arbitration agreements contain specific time limitations, courts will adhere strictly to those limitations absent a compelling reason to do otherwise. *Universal*, 16 F.3d at 127. Courts also apply a cardinal principle of contract interpretation: they will read arbitration documents as a whole, give effect to all of their provisions, and render those provisions consistent with one another. *Id.* at ——; 115 S.Ct. at 1219.

■ The first issue is whether Aurora's July 15, 1996, letter properly invoked the arbitration clause. The court finds that it did. Neither party points to a section in the policy which indicates the manner in which a party should give notice that it is invoking the arbitration clause. They do, however, point to quite specific provisions regarding time limitations and definitions. For example, the contract defines the "Company" as Classic, and provides that, once notified, an opposing party has four weeks to name its arbitrator. The parties apparently did not include a specific provision regarding the method which a party should follow when notifying the other party of an invocation of arbitration. Thus, the parties left the requirements for such notification ambiguous: it is subject to various interpretations.

In its Response Brief, Classic states that the IIE was the party which Aurora should have notified of its invocation of the arbitration clause. This statement disregards the plain undisputed language of Endorsement 3 to the policy, which states that "The Company" referred to the underwriter, i.e., Classic. Thus, when Aurora was required to notify "The Company," it was required to notify Classic, not IIE.[2]

If the lack of a provision in an insurance contract creates an ambiguity, that ambiguity must be construed in favor of the insured. *Schwinn Cycling & Fitness, Inc. v. Hartford Acc. & Indemn. Co.*, 863 F.Supp. 784, 787 (N.D.11.1994); *U.S.F. & G. v. Wilkin Insulation Co.*, 144 Ill.2d 64, 161 Ill.Dec. 280, 578 N.E.2d 926 (1991). Therefore, the court must interpret the lack of a notification provision in favor of Aurora.

■ The court finds that Aurora's notification of Classic's designated claims administrator (as well as IIE's general counsel) was reasonable, in light of Aurora's prior course of dealing with that claims administrator, and the lack of a specific and instructive notification provision within the policy. The claims administrator was Classic's agent. Ordinarily, notice to an agent acting within the scope of its duty constitutes notice to the principal. *Northern Assur. Co. of Am. v. Summers*, 17 F.3d 956, 964 (7th Cir.1994). Although Classic states that the claims administrator was not the designated recipient of arbitration notices, Classic does not make a persuasive argument that the claims administrator would have been acting outside of the scope of his duty when he received Aurora's notice. The claims administrator had a history of dealing with Aurora regarding claims matters. It was reasonable for Aurora to direct its notice regarding arbitration of a claim to the claims administrator. Thus, interpreting the notice ambiguity in favor of Aurora, the insured, the court finds that Aurora's July 15, 1996, letter properly invoked the arbitration clause. Therefore, Classic had four weeks from that date to name the second arbitrator.

■ The issue then becomes whether Classic did so, i.e., whether Aurora Arbitrator II or Classic Arbitrator I will act as the second arbitrator. Classic does not dispute that its claims administrator received Aurora's notice on the afternoon of July 15, 1996. Thus, Classic had until four weeks from that date, or the afternoon of August 12, 1996, to name its arbitrator. It did not do so until August 13, 1996.

---

**2.** Even so, Classic does not dispute that Aurora sent a copy of its July 15, 1996, letter to IIE's general counsel, which is a reasonable manner of notifying IIE.

In *Universal Reins. Corp. v. Allstate Ins. Co.,* 16 F.3d 125 (7th Cir.1994), the Seventh Circuit strictly construed the explicit terms of an arbitration agreement. The *Universal* agreement provided that the notified party must name its arbitrator within thirty days after written notification of arbitration. Although the notified party failed to do so only because of a clerical error, and it took only thirty-four days to name its arbitrator, the Seventh Circuit held that it had not complied with the agreement, and that the notifying party had the right to name both arbitrators. *Id.* at 127. *See also, Evanston Ins. Co. v. Gerling Global Reins. Corp.—U.S. Branch,* No. 90 C 3919, 1990 WL 141442 (N.D.Ill. Sept. 24, 1990) (applying strict interpretation of arbitration clause provisions).

Applying *Universal,* the court must find that, although Classic's naming of Classic Arbitrator I was only one day late, it was too late. Classic has not produced any compelling reason which would warrant a different holding in light of precedent. Aurora may name both arbitrators.

### III. CONCLUSION

Classic agreed to the terms of the contract with Aurora. The parties set their own deadlines. "It is tempting to relieve [Classic] of the consequences of its oversight. Its delay in naming an arbitrator was brief and inadvertent, and it caused no ostensible prejudice to [Aurora]. But the parties themselves have dictated the outcome in this situation, and absent compelling circumstances, it is not our province to rewrite their agreement." *Universal,* 16 F.3d at 129. But no temptation prevails here. Oversight and inadvertency do not override the express terms of the arbitration agreement. A day late by any other name would remain belated. Allowing parties to avoid the consequences of their own arbitration agreements by running to courts would obfuscate the purpose of arbitration agreements and, moreover, of the FAA.

IT IS SO ORDERED.