**UNITED STATES COURT OF APPEALS**
**For the Fifth Circuit**

No. 97-30185

GENERAL MOTORS CORPORATION,

Plaintiff-Appellant,

VERSUS

PAMELA EQUITIES CORPORATION,

Defendant-Appellee.

Appeal from the United States District Court
for the Eastern District of Louisiana

July 9, 1998

Before EMILIO M. GARZA, STEWART, and DENNIS, Circuit Judges.

DENNIS, Circuit Judge.

This arbitration-related case arises from an original dispute over whether General Motors Corporation ("GMC"), as a lessee, owes its lessor, Pamela Equities Corporation ("PEC"), damages for failure to return leased premises in good condition. The parties agree that the original dispute is subject to arbitration under an arbitration clause in the lease contract; and that PEC timely called for arbitration of the original dispute and appointed its arbitrator.

This appeal involves further disputes over (1) whether GMC waived its right to appoint its arbitrator by its failure to name him within the period allowed by the arbitration clause so that arbitration must proceed before PEC's arbitrator and an umpire selected by him; and (2) whether GMC and PEC agreed to submit that dispute regarding the appointment of the GMC arbitrator and the composition of the arbitration panel to PEC's arbitrator for arbitration.

## I. BACKGROUND

This case arises under an arbitration clause in a lease agreement between appellant-lessee GMC and appellee-lessor PEC.[1]

Article VIII of the lease, entitled "Arbitration," sets forth the scope of the parties' agreement to arbitrate:

> In case any differences arise between the Lessor and the Lessee regarding the true meaning and intent of any of the terms and provisions of this lease or if any dispute should arise between them regarding the performance or nonperformance by either of them of any of the terms, covenants and conditions hereof, or if any claim is made by either of them that the other is in default by reason of the non-performance of any act provided for hereunder, then, and in any of such events, the matter in dispute, whether the same be the performance of an act, the forbearance of an act, or the payment of money, shall be submitted to arbitration. . . .

---

[1] Although not a party to the original 1955 lease agreement with GMC, PEC became lessor by assignment from the original lessor, Massachusetts Mutual Life Insurance Company.

Section 8.01 of the arbitration provision establishes the method of selecting arbitrators:

> (a) The party desiring arbitration shall notify the other party, specifying the dispute and appointing an individual as its arbitrator. Within fifteen (15) days thereafter the other party shall appoint an individual as its arbitrator and shall notify the original party thereof, and failing to appoint such an arbitrator, such party shall be bound by the determination of the arbitrator appointed by the party demanding arbitration, both as to the selection of an umpire and the award to be made in the arbitration proceedings;
>
> (b) The arbitrators so appointed by each of the parties, or if the party against whom arbitration is demanded shall fail to appoint an arbitrator, then the arbitrator appointed by the party demanding arbitration, shall within ten (10) days thereafter appoint a disinterested individual who shall act as umpire;

In October 1994, GMC notified PEC that it intended to terminate the lease effective August 31, 1995. Thereafter, the parties had an on-going dispute concerning GMC's liability for alleged damage to the leased premises. On August 28, 1996, in accordance with the notice requirements of the lease, PEC sent duplicate certified letters to GMC's unnamed "Executive in Charge of Real Estate," and to G.E. Gilliken ("Gilliken"), the GMC property manager who had been negotiating the lease dispute with PEC. After describing in detail the nature of the dispute (also required by the terms of the lease), in the last paragraph of the letter, PEC advised GMC that it was electing to settle the dispute through arbitration, and that it had selected as its arbitrator Stephen H. Kupperman ("Kupperman"). On August 30, 1996, an unknown

3

GMC representative signed a return receipt acknowledging receipt of PEC's arbitration demand letter. However, Gilliken was on vacation when GMC received the letter, and he did not see the letter until he returned to work on September 18, 1996.

By letter of September 25, 1996, GMC's attorney, Andrew S. Conway ("Conway"), notified PEC that GMC had appointed Judge George N. Bashara, Jr. ("Bashara") as its arbitrator. On October 2, 1996, PEC's arbitrator, Kupperman, wrote GMC that it had waived its right to appoint an arbitrator because GMC had not done so within the requisite fifteen days. Therefore, Kupperman said, he would appoint an umpire pursuant to the arbitration clause and proceed with arbitration. In this letter, Kupperman specifically requested that GMC inform him whether it disagreed with his "understanding" that GMC had waived its right by not appointing its arbitrator timely. Kupperman appointed as the "disinterested" umpire Campbell C. Hutchinson ("Hutchinson"), his own law partner.

On October 24, 1996, by letter to Kupperman, Conway made a "formal request" that GMC's appointment of Bashara as the second arbitrator be honored on the grounds that: (1) the nine-day period of delay was insignificant under the circumstances; (2) PEC's request for arbitration did not satisfy the lease's notice requirements; and (3) PEC suffered no palpable prejudice resulting from the delay. In this letter to PEC's arbitrator, GMC's counsel "respectfully request[ed] the arbitrator to recognize" the selection of Bashara, closing the letter with the phrase "Respectfully submitted."

4

In November 1996, Kupperman advised Conway by letter that he had reviewed GMC's "submissions" regarding the selection of a second arbitrator and had concluded that GMC's attempt to appoint Bashara was untimely, was not permitted under the lease, and that the arbitration would proceed with Kupperman as the single arbitrator and Hutchinson as the umpire.

In December 1996, GMC filed a Motion to Appoint Arbitrators and a Disinterested Umpire pursuant to the pre-arbitration provisions of the Federal Arbitration Act, 9 U.S.C. §§ 4 and 5. In its motion, GMC asked the district court for an order compelling the arbitration to proceed in "a fair and impartial manner," and allowing GMC's arbitrator to serve on the panel, along with a disinterested umpire to be selected by the two party-appointed arbitrators. The district court denied GMC's motion, finding that GMC had impliedly agreed to submit to Kupperman the issue of whether GMC's appointment of its arbitrator was valid. The court also found that GMC had waived its right to judicial review of Kupperman's decision by not expressly reserving this right. Finally, addressing the merits of Kupperman's decision, the court concluded that it was reasonable and should not be upset.

Thereafter, the district court granted GMC's motion to stay the arbitration pending disposition of this appeal.

## II. STANDARD OF REVIEW

A court of appeals' review of a district court decision upholding an arbitration decision on the ground that the parties agreed to submit their dispute to arbitration should proceed like review of any other district court decision finding an agreement between parties, i.e., accepting findings of fact that are not "clearly erroneous" but deciding questions of law de novo. *First Options of Chicago, Inc. v. Kaplan,* 514 U.S. 938, 947-48 (1995); *F.C. Schaffer & Assocs., Inc. v. Demech Contractors, Ltd.,* 101 F.3d 40, 43 (5th Cir. 1996).

## III. GENERAL PRINCIPLES

Arbitration is the reference of a particular dispute to an impartial third person chosen by the parties to a dispute who agree, in advance, to abide by the arbitrator's award issued after a hearing at which both parties have an opportunity to be heard. Rodolphe J.A. de Seife, *Practice Guide* § 3.02, *in* GABRIEL M. WILNER, 2 DOMKE ON COMMERCIAL ARBITRATION (Rev. ed. 1997) (citing BLACK'S LAW DICTIONARY (5th ed. 1979); THE PLAIN LANGUAGE LAW DICTIONARY (Rothenberg, ed. 1981); DICTIONARY OF LAW (Coughlin, ed. 1982); Britton, THE ARBITRATION GUIDE, (1982)). *See also* La. Civ. Code art. 3099. Parties may agree to the submission to arbitration of existing controversies without any previous contract to do so. *Executone Info. Sys., Inc. v. Davis,* 26 F.3d 1314, 1323 (5th Cir. 1994). Parties may also may agree upon the use of arbitration at the commencement of a contractual relationship to settle future

6

disputes by including an arbitration clause in their contract. 1 DOMKE, *supra* § 1:01, at 2.

When the parties have entered a contract to arbitrate future disputes, the scope of authority of the arbitrator is not always controlled by that contract alone. *Piggly Wiggly Operators' Warehouse, Inc. v. Piggly Wiggly Operators' Warehouse Independent Truck Drivers Union,* 611 F.2d 580, 583 (5th Cir. 1980). The arbitration contract is in essence a promise to arbitrate a category of future disagreements. *Id.* When such a dispute arises, in order for arbitration to actually proceed, the parties must supplement the contract with an agreement defining the issue to be submitted to the arbitrator(s) and by explicitly giving the arbitrator(s) authority to act. *Id.*

When the parties to a disagreement have not entered a pre-dispute arbitration contract, in order for arbitration to take place, they must agree to submit their existing controversy to the arbitrator(s), named by the parties or persons authorized to do so by them, for binding arbitration. 1 DOMKE, *supra* § 1.01, at 1-2; TOM CARBONNEAU, CASES AND MATERIALS ON COMMERCIAL ARBITRATION 17 (1997). Consequently, voluntary arbitration cannot occur, regardless of whether the parties have entered a pre-dispute contract to arbitrate, unless the parties to the dispute enter a post-dispute agreement to submit the dispute as defined by them to the particular arbitrator(s) they name or authorize to be designated. *Piggly Wiggly,* 611 F.2d at 583.

Unless required by statute, a person who is not a party to a pre-dispute contract to arbitrate cannot be compelled to submit a dispute to arbitration. *United Steelworkers v. Warrior & Gulf Navigation Co.,* 363 U.S. 574, 582 (1960). A party to a contract to arbitrate prospective disputes, however, may be compelled by a court to submit a post-contract dispute to arbitration if the arbitration contract requires him to do so. *Dean Witter Reynolds, Inc. v. Byrd,* 470 U.S. 213, 218 (1985); Federal Arbitration Act, 9 U.S.C.A. § 4 (West 1970). Whether the contract so requires is a question of contract interpretation for the courts, unless the parties have clearly and unmistakably agreed that even that issue shall be submitted to binding arbitration. *Piggly Wiggly,* 611 F.2d at 583-84 (citing *Warrior & Gulf,* 363 U.S. at 583 n.7). As the Supreme Court, in *First Options of Chicago, Inc. v. Kaplan,* 514 U.S. 938 (1995), recently stated: "Courts should not assume that the parties agreed to arbitrate arbitrability unless there is 'clea[r] and unmistakabl[e]' evidence that they did so." *Id.* at 944 (quoting *AT&T Technologies, Inc. v. Communications Workers,* 475 U.S. 643, 649 (1986)). Thus, the Court explained, "the law treats silence or ambiguity about the question 'who (primarily) should decide arbitrability' differently from the way it treats silence or ambiguity about the question 'whether a particular merits-related dispute is arbitrable because it is within the scope of a valid arbitration agreement[.]'" *Id.* at 944-45.

## IV. DISCUSSION

In the district court, GMC moved to compel PEC to submit their original dispute over GMC's alleged breach of the lease contract to arbitration by a three-member arbitration panel, composed of an arbitrator named by each party and a disinterested umpire selected by the arbitrators. In support of its motion, GMC argued, in effect, that PEC unjustifiably had refused to arbitrate under the contract by denying the authority of GMC's arbitrator and demanding that GMC submit the original issue to the PEC arbitrator, Kupperman, and an umpire named by him. GMC contended that it had not waived its right under the contract by appointing Judge Bashara as its arbitrator nine days late because PEC did not give GMC adequate notice, and GMC's slight delay was inadvertent and not prejudicial to PEC. GMC relies on court decisions concluding that one party has not waived its right to a three-member arbitration panel when a time-specific waiver clause had expired under such circumstances. *See, e.g., Texas E. Transmission Corp. v. Barnard,* 285 F.2d 536 (6th Cir. 1960); *New England Reinsurance Corp. v. Tennessee Ins. Co.,* 780 F. Supp. 73 (D. Mass. 1991); *Compania Portorafti Commerciale, S.A. v. Kaiser Int'l Corp.,* 616 F. Supp. 236 (S.D.N.Y. 1985); *Trade Arbed, Inc. v. S/S Ellispontos,* 482 F. Supp. 991 (S.D. Tex. 1980).

PEC opposed GMC's motion, contending that the parties had agreed to submit to Kupperman, PEC's arbitrator, their dispute over the appointment of GMC's arbitrator and the composition of the arbitration panel. Accordingly, PEC contended, GMC was bound by

9

Kupperman's decisions that GMC had submitted the composition of arbitration panel issue to him for decision, that GMC had acted untimely, thereby waiving its right to appoint an arbitrator, and that the parties must proceed to arbitrate the original breach of lease dispute before a two-member arbitration panel, i.e., Kupperman and the umpire selected by him. In the alternative, PEC urged the court to decide the merits of the waiver issue in its favor, relying on court cases holding that similar arbitration contract clauses should be enforced as written to require forfeiture of a party's arbitrator appointment for untimeliness. *See, e.g., Universal Reinsurance Corp. v. Allstate Ins. Co.,* 16 F.3d 125 (7th Cir. 1993); *City of Aurora, Colo. v. Classic Syndicate, Inc.,* 946 F. Supp. 601 (N.D. Ill. 1996); *Evanston Ins. Co. v. Gerling Global Reinsurance Corp.,* No. 90 C 3919, 1990 WL 141442 (N.D. Ill. Sept. 24, 1990).

The district court found that the parties had submitted to Kupperman their dispute over the composition of the arbitration panel and deferentially upheld as "eminently reasonable" Kupperman's arbitral decision to proceed with arbitration before himself and his selected umpire. GMC appealed. The district court stayed arbitration pending GMC's appeal.

In this court, the parties present essentially the same arguments that they did in the district court. We conclude that GMC's appeal raises two questions: (1) whether GMC agreed to submit to Kupperman, the PEC arbitrator, the question of GMC's alleged waiver of its right to appoint an arbitrator so that

10

arbitration must proceed before a two-member panel consisting of Kupperman and his selected umpire; and, if not, (2) whether that dispute should be decided on the merits by the courts or is, instead, a dispute, separate from the original dispute, that is arbitrable under the arbitration contract, so that each party should be afforded an opportunity to choose whether to have it submitted to a separate three-member arbitration panel or to waive the right to arbitrate that issue and submit it to the district court for decision.

(1)

The question of whether an arbitrator has the power to arbitrate a dispute depends on whether the parties to the dispute agreed to submit the question to that arbitrator for decision. If the dispute includes an issue as to the scope of the arbitrator's authority, courts should not assume or conclude that the parties agreed to submit the question of the scope of the arbitrator's own authority to that arbitrator unless there is "clear and unmistakable evidence" that they did so.

These principles, including the "clear and unmistakable evidence" standard, are derived from *First Options of Chicago, Inc. v. Kaplan,* 514 U.S. 938, 944 (1995), and its progenitors, *viz., AT&T Technologies, Inc. v. Communications Workers,* 475 U.S. 643 (1986); *United Steelworkers v. Warrior & Gulf Navigation Co.,* 363 U.S. 574 (1960). *First Options* was a case in which the parties to the pertinent dispute had not entered a contract to arbitrate future controversies, whereas in *AT&T* and *Warrior & Gulf* the

11

parties had confected pre-dispute arbitration agreements.  From the salient features of the cases, and the Court's observations, we conclude that the "clear and unmistakable evidence" standard applies whenever one party to a dispute contends that the other party agreed to submit to an arbitrator the question of whether that arbitrator has been authorized to resolve the merits of their dispute, regardless of whether the parties have entered a pre-dispute arbitration contract.

For example, in *First Options*, the Court articulated the basic principle that "[c]ourts should not assume that the parties agreed to arbitrate arbitrability unless there is 'clea[r] and unmistakabl[e]' evidence that they did so."  514 U.S. at 944 (citing *AT&T*, 475 U.S. at 649; *Warrior & Gulf*, 363 U.S. at 583 n.7).  In this respect, the Court indicated, the law creates a presumption that the parties did not agree to submit any question as to the arbitrator's own power to that very same arbitrator.  *Id.* Consequently, any silence, ambiguity or doubts about this question should be resolved in favor of concluding that the parties did not agree to submit the issue to the arbitrator.  *Id.* at 944-45.

The Court, in *First Options*, explained the underlying reasons for the presumption against an arbitrator having the power to decide the scope of his own power:

> [T]he "who (primarily) should decide arbitrability" question [] is rather arcane. A party often might not focus upon that question or upon the significance of having arbitrators decide the scope of their own powers. And, given the principle that a party can be forced to arbitrate only those issues it specifically has agreed to submit to

12

> arbitration, one can understand why courts might hesitate to interpret silence or ambiguity on the "who should decide arbitrability" point as giving the arbitrators that power, for doing so might too often force unwilling parties to arbitrate a matter they reasonably would have thought a judge, not an arbitrator, would decide.

*Id.* at 945 (internal citations omitted).

These principles are not new.

> [T]he question of arbitrability -- whether a[n] . . . agreement creates a duty for the parties to arbitrate the particular grievance -- is undeniably an issue for judicial determination. Unless the parties clearly and unmistakably provide otherwise, the question of whether the parties agreed to arbitrate is to be decided by the court, not the arbitrator.

*AT&T,* 475 U.S. at 649. In an earlier arbitration decision, the Supreme Court declared:

> [T]he question of arbitrability is for the courts to decide. Where the assertion by the claimant is that the parties excluded from court determination not merely the decision of the merits of the grievance but also the question of its arbitrability, vesting power to make both decisions in the arbitrator, the claimant must bear the burden of a clear demonstration of that purpose.

*Warrior & Gulf,* 363 U.S. at 583 n.7 (internal citation omitted).

The Court's holdings and observations demonstrate that when a party to a dispute contends that he and the other disputant agreed to submit to a third person the question of whether that arbitrator had authority to arbitrate their dispute, that party must bear the burden of demonstrating clearly and unmistakably that the parties

13

agreed to have the arbitrator decide that threshold question of arbitrability.

On the record before us, PEC cannot show that GMC clearly and unmistakably agreed to submit to Kupperman the dispute over GMC's appointment of its arbitrator and the composition of the arbitration panel, thus granting Kupperman authority to determine the scope of his own arbitral powers. The arbitration clause in the lease contract does not clearly and unmistakably grant Kupperman the authority to decide the scope of his own powers. PEC correctly does not so contend but, instead, relies on correspondence and conduct of the parties to show that they agreed to submit to Kupperman the questions relating to the arbitrators' powers. This evidence is filled with doubts, created by silence and ambiguities, which must be resolved against finding an agreement by GMC to submit to Kupperman the questions as to the existence and scope of the arbitrators' powers.

PEC relies primarily on a letter from one of GMC's attorneys to Kupperman dated October 24, 1996 making a "formal request to honor the selection by GM to appoint as a second arbitrator, Judge George N. Bashara, Jr." After stating the facts and contract provisions that he believed required the recognition of Judge Bashara as the second arbitrator, the attorney closed as follows:

> In conclusion, GM respectfully requests the arbitrator to recognize the selection by GM of Judge Bashara as a duly appointed arbitrator in this matter because the period of the delay is insignificant coupled with the facts and circumstances surrounding the delay, because the request for arbitration failed to meet the notice requirements of the Lease, and because there has been no palpable prejudice suffered by PE.

14

Respectfully submitted,

Andrew S. Conway

Further, PEC points to the fact that GMC did not expressly state that it objected to Kupperman deciding the questions bearing on the authority of the arbitrators and the composition of the panel or expressly reserve its right to judicial review of Kupperman's decision.

On the other hand, at the hearing on GMC's motion, Kupperman admitted that GMC never conceded its right to judicially challenge Kupperman's assertion of exclusive arbitral powers. In fact, Kupperman testified that Conway, GMC's counsel, never told him that GMC agreed to be bound by Kupperman's decision on the question of the timeliness of GMC's appointment of Bashara. Kupperman also admitted that he always assumed that GMC would be opposed to his serving as the sole arbitrator of their dispute.

None of GMC's correspondence actually states that it agreed for Kupperman to act as a single arbitrator or that it was submitting the dispute to him. None of GMC's actions and correspondence clearly and unambiguously indicate an intention to submit any dispute to Kupperman for arbitration. They reasonably may be interpreted as GMC's attempt amicably to persuade Kupperman and PEC, who appointed him, that they should in good faith recognize Bashara as the second arbitrator to facilitate the parties' fair and expeditious arbitration of their original dispute before a three-member panel. "[M]erely arguing the arbitrability issue to an arbitrator does not indicate a clear willingness to arbitrate that issue, i.e., a willingness to be effectively bound

15

by the arbitrator's decision on that point." *First Options*, 514 U.S. at 946.

Conway's use of the terms "arbitrator," "respectfully submitted" and "formally requests" in correspondence with Kupperman may reasonably be interpreted to be expressions of courtesy and respect toward Kupperman as one potential member of a three-member arbitration panel rather than as language of arbitral submission of a question to him as the sole arbitrator. The use of such terms does not constitute clear and unmistakable evidence of GMC's agreement to grant Kupperman the authority to decide whether GMC waived its right to appoint an arbitrator and thereby grant Kupperman the exclusive power to act as arbitrator in selecting an umpire and arbitrating the original breach of lease dispute.

Accordingly, we conclude that the evidence is insufficient to support a finding that GMC clearly and unmistakably agreed to submit to Kupperman the question of the scope of his own power as arbitrator. Consequently, we set aside Kupperman's decisions and vacate the district court's ruling insofar as it upholds them.

The district court reached the opposite conclusion because it did not apply the *First Options* presumption against the finding of an agreement to arbitrate arbitral authority or, in other words, the *First Options* requirement that such agreements be proved by clear and unmistakable evidence. The district court, in effect, reversed the presumption, finding that GMC consented to submit the issue of timeliness to Kupperman on the basis of merely ambiguous evidence, *viz.*, Conway's discussion of a briefing schedule with

16

Kupperman, the lack of an express reservation of GMC's right to seek judicial review of the timeliness issue, the lack of express objection to Kupperman as a sole arbitrator, and the language and tone of Conway's October 24 letter, which the court found reflected deference to Kupperman as a decision maker. Because all of the evidence as a whole does not clearly and unmistakably demonstrate an agreement to submit the dispute over arbitral powers to Kupperman as sole arbitrator, GMC's failure to expressly object or reserve a right to judicial review is consistent with its lack of consent to such arbitration in the first place.

The district court may have been misled by its reliance on *George Day Constr. Co. v. United Bhd. of Carpenters and Joiners,* 722 F.2d 1471 (9th Cir. 1984), which stands principally for the proposition that a claimant may not voluntarily submit his claim to arbitration, await the outcome, and, if the decision is unfavorable, then challenge the authority of the arbitrator to act. The *George Day* case is not an appropriate precedent for use in deciding the present case for several reasons. In *George Day,* the crucial issue was not whether the employer had submitted the question of arbitral authority to the arbitrator but whether, after doing so, it had reserved that question for judicial determination. The *George Day* court summarily found that "the merits of the dispute along with the question of jurisdiction were fully addressed by the parties during the arbitration proceeding and, at its conclusion, the entire controversy was submitted to the arbitrator for decision." *Id.* at 1475. *George Day* was decided

17

before *First Options* clearly articulated the principle that an agreement to submit the question of arbitral authority to the arbitrator must be demonstrated by "clear and unmistakable evidence." Because *George Day* does not set forth in great detail the evidence from which it concluded that the employer "by conduct evinced clearly its intent to allow the arbitrator to decide not only the merits of the dispute but also the question of arbitrability[,]" *id.*, we cannot determine whether the same result should have been reached under the *First Options* "clear and unmistakable evidence" standard. Evidently, however, the evidence tending to show George Day's intention to submit the arbitral authority issue to the arbitrator was much stronger and less ambiguous than any evidence that GMC intended to do so. In any event, *First Options* and not *George Day* governs the decision of the present case.

(2)

Although the district court should not have upheld Kupperman's arbitral decision, this does not necessarily mean that the district court or this court should immediately proceed to decide whether GMC's appointment of an arbitrator was timely and whether arbitration of the original dispute should proceed before a two- or three-member arbitration panel. The dispute between the parties involving the authority *vel non* of GMC's arbitrator and the scope of authority of PEC's arbitrator is a separate dispute that is arbitrable under the parties' pre-dispute arbitration contract,

18

provided that no arbitrator is called upon to decide the scope or existence of his or her own arbitral authority. Because arbitration is favored by public policy and the courts as a means of removing disputes from litigation, *Hartford Lloyd's Ins. Co. v. Teachworth,* 898 F.2d 1058, 1061 (5th Cir. 1990); *Seaboard Coastline R.R. v. National Rail Passenger Corp.,* 554 F.2d 657, 660 (5th Cir. 1977), we conclude that the parties should be allowed to either arbitrate that dispute before a new arbitration panel or waive their rights to such arbitration and resort to the courts.

The parties' arbitration contract clause provides, in pertinent part, that if any dispute should arise between the parties regarding the performance or nonperformance by either of them of any of the terms, covenants and conditions of the agreement, or if any claim is made by either of them that the other is in default by reason of the non-performance of any act provided for in the agreement, then the matter in dispute shall be submitted to arbitration.

The question of arbitrability is to be decided by the court on the basis of the contract entered into by the parties. *Commerce Park at DFW Freeport v. Mardian Constr. Co.,* 729 F.2d 334, 338 (5th Cir. 1984). A presumption of arbitrability exists requiring that whenever the scope of an arbitration clause is fairly debatable or reasonably in doubt, the court should decide the question of construction in favor of arbitration. *Mar-len of La., Inc. v. Parsons-Gilbane*, 773 F.2d 633, 635-36 (5th Cir. 1985) (citing *Warrior & Gulf,* 363 U.S. at 583). The weight of this presumption

19

is heavy: "[A]rbitration should not be denied 'unless it can be said with positive assurance that an arbitration clause is not susceptible of an interpretation that could cover the dispute at issue.'" *Id.* at 636 (quoting *Wick v. Atlantic Marine, Inc.,* 605 F.2d 166, 168 (5th Cir. 1979)).

Applying these principles, we conclude that the parties' arbitration clause is reasonably susceptible to the interpretation that their dispute is arbitrable before a separate panel of arbitrators who are not called upon to decide the existence or scope of their own arbitral powers.[2]  *See, e.g., Carter v. Cathedral Ave. Coop., Inc.,* 658 A.2d 1047, 1050 (D.C. App. 1995) (holding that the trial court correctly determined that the issue whether a tenant waived its right to have its rent dispute resolved before a three-member arbitration panel by failing to name its arbitrator within the stipulated period is an issue to be resolved by a panel of three arbitrators).  The resolution of this dispute by a separate three-member arbitration panel is consistent with the parties' agreement and the policy favoring arbitration.  Because the new arbitrators will not be called upon to decide the scope of

---

[2] The parties' controversy involving the existence or scope of their arbitrators' authority is a genuine, good faith dispute.  It depends ultimately upon the question of whether an untimely appointment of an arbitrator under an arbitration contract clause such as the one in the present case causes the party who acted tardily to forfeit his right to appoint an arbitrator.  This is a question upon which reasonable judicial minds have reached conflicting conclusions under varying circumstances.  *Compare Universal Reinsurance Corp. v. Allstate Ins. Co.,* 16 F.3d 125 (7th Cir. 1993) *with Texas E. Transmission Corp. v. Barnard,* 285 F.2d 536 (6th Cir. 1960).

their own powers, we need not find that the arbitration clause clearly and unmistakably authorizes arbitration of the dispute before a separate panel. It is only required that we find, as we do, that the arbitration clause reasonably encompasses the dispute and authorizes its submission to a separate panel of arbitrators appointed in accordance with the parties' contract.

Accordingly, under the terms of the arbitration contract, each party should be given an opportunity to institute an independent, new arbitration proceeding to resolve this separate dispute. On the other hand, if the parties should choose in the interest of time and efficiency to waive their rights to arbitrate this separate dispute and submit the questions involving the authority of GMC's arbitrator and the scope of authority of PEC's arbitrator to the district court for decision, we see no impediment to their doing so.

For the reasons assigned, the district court's judgment is VACATED, but its STAY ORDER IS MAINTAINED staying the arbitration proceedings pending the district court's further orders. The case is REMANDED to the district court for further proceedings in accordance with this opinion.

21