# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 14-10403

United States Court of Appeals
Fifth Circuit

**FILED**

May 8, 2015

Lyle W. Cayce
Clerk

OMG, L.P.; JOHN GALLO; GREG MARTIN,

Plaintiffs - Appellees

v.

HERITAGE AUCTIONS, INCORPORATED,

Defendant - Appellant

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 3:13-CV-1404

Before JONES and HAYNES, Circuit Judges, and CRONE, District Judge.*
PER CURIAM:**

Heritage Auctions, Inc. ("Heritage") appeals the district court's order and judgment vacating an arbitration award against OMG, LP ("OMG"), John Gallo, and Greg Martin. In the order accompanying its Judgment, the district

---

* District Judge for the Eastern District of Texas, sitting by designation.

** Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 14-10403

court adopted the report and recommendation of the magistrate judge, who found that "a court was the proper decision-maker as to contract formation issues in this case, not the arbitrator." We hold that the parties agreed to arbitrate the issue of contract formation by submitting, briefing, and generally disputing that issue throughout the arbitration proceedings, with the plaintiffs never contesting the arbitrator's authority to decide contract formation until he issued an adverse award. By submitting issues for an arbitrator's consideration, parties may expand an arbitrator's authority beyond that provided by the original arbitration agreement such that we need not address whether the original agreement encompassed such authority. *See generally Piggly Wiggly Operators' Warehouse, Inc. v. Piggly Wiggly Operators' Warehouse Indep. Truck Drivers Union, Local No. 1*, 611 F.2d 580, 584 (5th Cir. 1980). We therefore REVERSE the district court's Judgment and REMAND the case with instructions for the district court to confirm the arbitration award.

## I. Background

Heritage is a large and prominent auction house, boasting over $800 million in merchandise sales. OMG is the successor[1] of various entities that have auctioned high-end firearms through the collaboration of Bernard Osher, Greg Martin, and John Gallo. OMG and Heritage arrived in arbitration after failing to resolve disagreements about the commissions OMG should receive for sales of firearms and related merchandise made through Heritage's auction business. OMG and Heritage agreed to partner in selling this type of merchandise through two agreements: (1) the Asset Purchase Agreement

---

[1] Heritage actually transacted with Greg Martin Auctions, LP ("GMA"), of which OMG is the successor. For simplicity's sake, we will reference both entities as "OMG" throughout this opinion.

No. 14-10403

("APA"), under which OMG transferred all of its assets, including its name, trademarks, customer information, and other items, to Heritage for $150,000; and (2) the Consulting Agreement ("CA"), in which OMG agreed to consult for Heritage in exchange for commissions on the sales of firearms and "Merchandise."

This case arose out of a dispute over the calculation of commissions and the meaning of "Merchandise" under the CA. The CA never defines "Merchandise," but Exhibit A to the CA says that OMG and Martin "shall be responsible for procuring . . . firearms and firearm related merchandise on consignment for auction (the "Merchandise"), using their reasonable best efforts." OMG believed the CA entitled it to commissions for any firearms or related merchandise sold by Heritage—broadly defined to include western art, correspondence, and antique items—regardless of who procured the merchandise. By contrast, Heritage believed the CA entitled OMG only to commissions for items OMG procured—including firearms and narrowly-related merchandise like bullets, bayonets, holsters, and like items. The parties were unable to resolve these disputes themselves, so Heritage terminated the CA and demanded arbitration to, among other things, resolve the meaning of "Merchandise."

Both the APA and CA contain arbitration clauses that mandate arbitration of "[a]ny dispute or difference between the Parties hereto arising out of or in any way related to this Agreement," including "whether a valid agreement to arbitrate has been made in the first instance and whether certain disputes are subject to arbitration." In resolving disputes, the arbitrator has "the authority to grant any equitable and legal remedies that would be available in any judicial proceeding." The CA and APA were to be "construed in accordance with the Laws of the State of Texas."

No. 14-10403

At arbitration, Heritage argued, among other things, that there was no "meeting of the minds" on the meaning of "Merchandise" or on how commissions should be calculated and that the contract was therefore unenforceable and should be rescinded. The arbitrator accepted this argument, reasoning that the meaning of "Merchandise" and the calculation of commissions were ambiguous and that there was no way to resolve the ambiguity. Accordingly, the arbitrator found that the parties' minds never met and that a contract never existed. The arbitrator therefore cancelled the contract, abrogating its unperformed portions and noting Heritage had abandoned its claim to use OMG or Martin's name and likeness and that it could not restrict OMG or Martin from competing against it in the future.

OMG then filed suit in federal court, seeking to vacate the arbitration award on the grounds that the arbitrator exceeded his authority, committed prejudicial misconduct, ruled on a matter not submitted to him, and committed a manifest error of law. Heritage responded with a motion to confirm the award. Over Heritage's objection, the district court adopted the magistrate judge's recommendation and vacated the award. The magistrate judge reasoned that "a court was the proper decision-maker as to contract formation issues in this case, not the arbitrator. By finding that the APA and the CA never came into existence, the arbitrator intruded on an issue that was reserved for an alternative decision-maker and thereby exceeded his authority." Heritage now appeals from the district court's order and judgment vacating the arbitration award and remanding the case to the arbitrator.

## II. Standard of Review

"Our review of the district court's confirmation or vacatur of an arbitrator's award is de novo." *Timegate Studios, Inc. v. Southpeak Interactive, L.L.C.*, 713 F.3d 797, 802 (5th Cir. 2013) (citing *Executone Info. Sys. v. Davis*,

4

26 F.3d 1314, 1320 (5th Cir. 1994)).  However, review of the arbitrator's award itself is highly deferential, and we "will defer to the arbitrator['s] resolution of the dispute whenever possible." *Anderman/Smith Operating Co. v. Tenn. Gas Pipeline Co.*, 918 F.2d 1215, 1218 (5th Cir. 1990).  "In deciding whether the arbitrator exceeded [his] authority, we resolve all doubts in favor of arbitration." *Executone*, 26 F.3d at 1320.

### III. Discussion

The Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1–16, constrains federal courts to a narrow review of arbitration awards.  *See Hall Street Assocs. v. Mattel, Inc.*, 552 U.S. 576, 586 (2008).  A court may vacate an award only if the award was procured by corruption, fraud, or undue means, the arbitrator was evidently partial or corrupt, the arbitrator was guilty of misconduct, or the arbitrator exceeded his or her powers.  *See id.*; 9 U.S.C. § 10(a)(1)–(4); *see also Citigroup Global Mkts., Inc. v. Bacon*, 562 F.3d 349, 358 (5th Cir. 2009) (holding that "manifest disregard of the law," as an independent nonstatutory ground for vacatur, did not survive the *Hall Street* holding).  Before this court, OMG argues that the arbitrator exceeded his authority in cancelling the contract.  OMG argues, first, that because the arbitrator found there was no contract between OMG and Heritage, the arbitrator could not draw authority from the CA and APA to decide the dispute.  Second, OMG argues that because the contract formation issue was not submitted to the arbitrator by either party, OMG did not consent to arbitration of that issue.  Heritage asserts that the issue of contract formation was arbitrated by the consent of both parties because Heritage submitted this issue to the arbitrator from the beginning, arguing (in the alternative to its argument about the meaning of "Merchandise") that the parties' minds never met and that the arbitrator should rescind the contract.

No. 14-10403

"Arbitration is a matter of contract, and the FAA requires courts to honor parties' expectations." *AT&T Mobility LLC v. Concepcion*, 131 S. Ct. 1740, 1752 (2011). "However, once the parties have gone beyond their promise to arbitrate and have actually submitted an issue to an arbiter, we must look both to their contract and to the submission of the issue to the arbitrator to determine his authority." *Piggly Wiggly*, 611 F.2d at 584; *see also Executone*, 26 F.3d at 1323. Accordingly, by their actions, the parties may agree to arbitrate disputes that they were not otherwise contractually bound to arbitrate. *Executone*, 26 F.3d at 1323.

Throughout the arbitration proceedings, from the initial pleadings to the post-arbitration briefing, the parties disputed whether there had been a meeting of the minds and whether rescission of the contracts between them would be an appropriate remedy. Heritage argued, first, that its interpretation of the CA and APA should govern, and in the alternative, that the CA was ambiguous such that there had been no meeting of the minds. In the latter case, Heritage requested a rescission of the CA (but not the APA). OMG argued (1) that the CA and APA were essentially one agreement and had to be construed together; (2) that the CA and APA were not ambiguous, but supported OMG's interpretation; and (3) if the CA and APA were ambiguous, parol evidence supported OMG's interpretation, thereby making rescission an inappropriate remedy. The parties clearly disagreed about how the arbitrator should construe the contract and about what remedy would be most appropriate in the event that the contracts' terms proved ambiguous. We conclude that Heritage sufficiently asserted that there had been no meeting of the minds, and OMG never contested the arbitrator's authority to resolve this issue. Instead, OMG disputed the meeting of the minds issue. As such, the parties agreed to arbitrate contract formation.

No. 14-10403

Heritage first asserted the contract formation issue in its original Demand for Arbitration and in its Amended Demand for Arbitration, sent to opposing counsel on April 23, 2012. In its Second Amended Demand for Arbitration on September 5, 2012, Heritage made the same claim, noting as one alternative argument that "Heritage believes that there was never a meeting of the minds concerning Martin's compensation" and again requesting such a finding and rescission of the CA. In its Answer to the Second Amended Demand on September 17, 2012, OMG generally denied Heritage's allegations regarding no meeting of the minds. In its answer to OMG's Third Amended Counterclaim, Heritage again asserted that if the CA was found ambiguous, "Heritage contends that there was never a meeting of the minds as to Martin's compensation."

Heritage and OMG sparred over the meeting of the minds issue in pre-arbitration briefing. In OMG's "Arbitration Brief," filed on October 5, 2012, OMG acknowledged Heritage's "Meeting of the Minds/Rescission" argument, countering only that rescission was inappropriate and that, in any event, the court could not award both damages and rescission. Several days later, Heritage asserted in its "Trial Brief" that "[i]n the alternative, the Arbitrator should determine that there was no meeting of the minds between the parties, and that therefore no enforceable contract was formed."[2]

On October 17, 2012, the parties orally argued and presented evidence at an arbitration hearing. Toward the end of the hearing, the arbitrator

---

[2] In its pre- and post-arbitration briefing, Heritage contended that the lack of any meeting of the minds constituted a "mutual mistake" and warranted rescission of the contract. Whatever Heritage labeled this lack of aligned expectations, it was clear throughout that it challenged an element crucial to contract formation. By the pre-arbitration briefing, Heritage explicitly made the argument that no enforceable contract had been formed between the parties.

7

inquired about whether OMG's counsel had objected to Heritage's argument that there was no meeting of the minds as not made in the pleadings. OMG's counsel responded that "[t]here was a reference in the prior pleadings to a meeting of the minds," but that "the term, 'mutual mistake,' I believe, was asserted for the first time in a brief." The arbitrator noted that he thought meeting of the minds was "an issue in the case," and asked: "[I]f I make a decision on that – on that, I'm not going to hear from somebody that it's not supported by the pleading or they don't have fair notice?" OMG did not respond. Heritage requested a "trial amendment" in case that argument was made, which the arbitrator granted.

Finally, the parties again discussed contract formation, rescission, and the meeting of the minds issue in post-arbitration briefing. Heritage cited evidence from the arbitration hearing that the parties' expectations never met and asserted again that rescission would be an appropriate remedy if the arbitrator found no meeting of the minds and therefore no enforceable contract. Heritage made the same arguments later in its reply brief. OMG filed a response brief in which it contended that "Heritage's Argument that the Consulting Agreement Should Be Rescinded on the Basis of No Meeting of the Minds is Meritless." OMG did not contest the arbitrator's authority to determine that no meeting of the minds had occurred; instead, it argued on the merits that rescission was not an appropriate remedy. OMG also requested an alternative damages amount of $728,902.88 in its post-arbitration response, which it claimed it was owed "in Commissions earned but not paid." In cancelling the CA and APA, the arbitrator ordered that OMG receive unpaid commissions and finder's fees based on items it had procured. Heritage was to perform an accounting and pay OMG the unpaid commissions it admitted to owing OMG, with interest, in addition to unpaid commissions and finder's fees

on items OMG procured that would be sold to customers in the future. The arbitrator specified that this was not a damages award because the CA was not enforceable; rather, he ordered this exchange as "part of a 'true up' to facilitate cancellation of the APA and CA and to avoid Heritage's receipt of a windfall."

An abundance of evidence in this case makes clear that OMG consented to the submission of the issues of contract formation and whether there was a meeting of the minds to the arbitrator. If OMG did not believe the arbitrator had the authority to decide those issues, it should have refused to arbitrate, leaving a court to decide whether the arbitrator could decide the contract formation issue. *See generally Jones Dairy Farm v. Local No. P-1236, United Food & Commercial Workers Int'l Union*, 760 F.2d 173, 174–77 (7th Cir. 1985) ("The company could therefore have refused to arbitrate; and if the union had sued it, the court would have decided whether the company had to arbitrate this particular dispute . . . . But Jones Dairy Farm did not make it an issue. . . . The company never questioned the arbitrator's authority."); *see also Gvozdenovic v. United Air Lines, Inc.*, 933 F.2d 1100, 1105 (2d Cir. 1991) ("Also, there is no evidence that, at any point before or during the arbitration, appellants objected to the process, refused to arbitrate or made any attempt to seek judicial relief.").

OMG simply cannot wait until it receives a decision with which it disagrees before challenging the arbitrator's authority. *See Jones Dairy*, 760 F.2d at 175 ("If a party voluntarily and unreservedly submits an issue to arbitration, he cannot later argue that the arbitrator had no authority to resolve it."). Courts, including our own, have refused to allow such maneuvering where parties initially submitted their grievances in writing to an arbitrator. *See, e.g., Piggly Wiggly*, 611 F.2d at 583–85; *Johnson v. United*

No. 14-10403

*Food & Commercial Workers, Int'l Union Local No. 23*, 828 F.2d 961, 965 (3d Cir. 1987) ("The parties, therefore, define the issues and empower the arbitrator. . . [whose] ultimate authority is not limited to the issues the collective bargaining agreement requires to be submitted, but expands to include those issues that the parties agree to submit." (citations omitted)); *cf. John Morrell & Co. v. Local Union 304A of United Food & Commercial Workers*, 913 F.2d 544, 560–61 (8th Cir. 1990) (noting that parties may agree to arbitrate certain issues through implication or through their own conduct, including "how the parties have framed the issue to be arbitrated," and finding an arbitrator acted outside his authority when the parties neither referred to the issue he decided in their opening briefs, nor offered evidence on the issue). Likewise, OMG and Heritage submitted the meeting of the minds and contract formation issues to the arbitrator in writing. Heritage pleaded the meeting of the minds issue in each of its demands for arbitration, argued the issue in its pre-arbitration briefing, elicited live witness testimony during the arbitration hearing about whether the parties' minds met, and raised these issues again in its post-arbitration briefing. OMG responded in each of these contexts, in writing, by arguing against the remedy Heritage requested (rescission), and by arguing that the CA and APA were not ambiguous. OMG never objected to the arbitrator's authority or contended that it had not agreed to arbitrate. *Cf. Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 70–71 (2010). Accordingly, OMG, by consent, submitted to the arbitration of contract formation.[3]

---

[3] Before this court, the parties also contest whether meeting of the minds is an issue that only a court may decide. We need not and do not decide whether a court would need to decide meeting of the minds, rather than allowing an arbitrator to do so, when faced with a contested motion to compel arbitration based on a potentially nonexistent contract. *See, e.g.*, *Rent-A-Ctr.*, 561 U.S. at 70–71; *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440 (2006); *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395 (1967); *Banc One*

No. 14-10403

OMG is also bound by the arbitrator's award, notwithstanding its various objections to the validity of the cancellation remedy in this context.[4] Cancellation and rescission are often "synonymous" under Texas law, which governs the CA and APA. *9029 Gateway S. Joint Venture v. Eller Media Co.*, 159 S.W.3d 183, 186 (Tex. App.—El Paso 2004, no pet.). Cancellation and rescission can operate in different ways, in that cancelling a contract may "abrogate so much of it as remains unperformed" and "differ[] from rescission, which means to restore the parties to their former position." *Manges v. Guerra*, 621 S.W.2d 652, 658 (Tex. App.—Waco 1981, writ granted) *rev'd in part, aff'd in part, on other grounds*, 673 S.W.2d 180 (Tex. 1984); *see also 9209 Gateway*, 159 S.W.3d at 186 ("If there is a distinction, it is only that rescission is a general undoing of an agreement while cancellation is a more formal annulment or rendering of an instrument ineffective as a legal obligation."

---

*Acceptance Corp. v. Hill*, 367 F.3d 426 (5th Cir. 2004); *Will-Drill Res., Inc. v. Samson Res. Co.*, 352 F.3d 211 (5th Cir. 2003). OMG did not resort to a court to object that meeting of the minds could not be arbitrated until after it had submitted to the entire arbitration process and received a result. Nor do we need to determine whether we must apply the "clear and unmistakable evidence" standard to resolve whether the parties agreed to submit the issue of arbitrability to the arbitrator. *See generally Gen. Motors Corp. v. Pamela Equities Corp.*, 146 F.3d 242, 250–51 (5th Cir. 1998). This case rests on a simpler question: whether OMG and Heritage, by their conduct, consented to the arbitrator determining the meeting of the minds issue by submitting it to the arbitrator and failing to object that he lacked authority to decide this issue. Even if we were to apply the clear and unmistakable evidence standard to whether OMG and Heritage arbitrated the meeting of the minds issue by consent, their repeated submission of this issue through the pleadings, briefing, and hearing testimony would suffice. *Cf. ConocoPhillips, Inc. v. Local 13-0555 United Steelworkers Int'l Union*, 741 F.3d 627, 630–34 (5th Cir. 2014) (finding no waiver of a challenge to the arbitrator's jurisdiction where a party repeatedly asserted that the arbitrator lacked jurisdiction to decide arbitrability).

[4] OMG objects that the arbitrator exceeded his authority by: (1) cancelling the contract, a remedy it alleges is not available under Texas law and that does not derive from the essence of the CA or APA. OMG also asserts that the arbitrator committed prejudicial misconduct under 9 U.S.C. § 10(a)(3) by failing to warn the parties he would grant cancellation and thereby depriving OMG of the chance to argue against cancellation.

11

No. 14-10403

(quoting *Ferguson v. DRG/Colony North, Ltd.*, 764 S.W.2d 874, 887 (Tex. App.—Austin 1989, writ denied)); *see also* 10 TEX. JUR. 3D *Cancellation and Reformation of Instruments* § 4 (same).  Given the often synonymous nature of cancellation and rescission and the extent to which the parties discussed and contested the remedy of rescission, each of OMG's objections to the arbitrator's chosen remedy fails.[5]

Accordingly, we REVERSE the district court's judgment and REMAND the case with instructions for the district court to confirm the arbitration award.

---

[5] OMG asserts that cancellation does not draw its essence from the contract and that the arbitrator could not order it because the parties never requested "cancellation" or specifically discussed "cancellation," rather than "rescission."  These arguments lack merit. The arbitrator granted a remedy that is often used interchangeably with rescission, which the parties addressed at length throughout the arbitration process.  *See generally PSC Custom, LP v. United Steel, Paper & Forestry, Rubber, Mfg., Energy, Allied Indus. & Serv. Workers Int'l Union, Local No. 11-770*, 763 F.3d 1005, 1010 (8th Cir. 2014) ("[T]hough the arbitrator's decision must draw its essence from the agreement, he is to bring his informed judgment to bear in order to reach a fair solution of a problem. *This is especially true when it comes to formulating remedies.*" (citation and internal quotation marks omitted)); *cf. Totem Marine Tug & Barge, Inc. v. N. Am. Towing, Inc.*, 607 F.2d 649, 651–52 (5th Cir. 1979) (finding an arbitrator ignored the dispute submitted by the parties in making an award).