

# COURT OF APPEALS
### SECOND DISTRICT OF TEXAS
### FORT WORTH

## NO. 02-15-00279-CV

PRESCRIPTION HEALTH                                         APPELLANTS
NETWORK, LLC, AND WILLIAM M.
BLACKSHEAR JR., M.D.

V.

TOBY R. ADAMS, LISA B. ADAMS,                               APPELLEES
AND ADAMS MARKETING
CONSULTING, INC.

----------

### FROM THE 442ND DISTRICT COURT OF DENTON COUNTY
### TRIAL COURT NO. 2013-50459-367

----------

## MEMORANDUM OPINION[1]

Appellants Prescription Health Network, LLC (PHN) and William M.

Blackshear Jr., M.D. (collectively, the PHN Defendants) appeal from the trial

court's judgment confirming an arbitration award in favor of Appellees Toby R.

---

[1]See Tex. R. App. P. 47.4.

Adams, Lisa B. Adams, and Adams Marketing Consulting, Inc. (AMC) (collectively, the Adams Plaintiffs).  We affirm.

## I.     Factual and Procedural Background

On June 11, 2013, the Adams Plaintiffs filed a lawsuit in the trial court asserting claims for common law fraud, fraud by nondisclosure, fraudulent inducement, negligent misrepresentation, breach of contract, tortious interference, civil conspiracy, and violations of the Texas Deceptive Trade Practices Act (DTPA), Tex. Bus. & Com. Code Ann. §§ 17.41–17.63 (West 2011 & Supp. 2016), arising from a franchise agreement (the Franchise Agreement) entered between the parties on June 8, 2012.  The Franchise Agreement concerned a Prescription Weight Loss Clinic that was being offered by the PHN Defendants to the Adams Plaintiffs.  In addition to the Franchise Agreement, PHN and AMC entered a "Social Media Marketing Services Agreement" that set forth certain obligations between the parties related to their agreement to do business.

The PHN Defendants moved to compel arbitration based on the arbitration clause in the Franchise Agreement that provided if a dispute among the parties was not resolved by mediation, the parties would resolve their dispute through arbitration governed by the Federal Arbitration Act (FAA), 9 U.S.C.A. §§ 1–16 (West 2009).  On October 30, 2013, the trial court granted the motion and stayed the litigation pending the outcome of the arbitration.

2

The parties submitted their dispute to a three-member arbitration panel (the Arbitration Panel). After a three-day hearing conducted September 17 to 19, 2014 and the submission of prehearing and posthearing briefs, the Arbitration Panel entered a "reasoned award" on October 30, 2014 (the Award). In the Award, the Arbitration Panel stated that it would interpret and enforce the Franchise Agreement under Florida law per its choice-of-law provisions but that it would apply Texas law to the tort claims asserted by the Adams Plaintiffs in accordance with the "most significant relationship" test.

The Arbitration Panel found that AMC did not comply with the Franchise Agreement and found that $2,100.25 was due to PHN from AMC for PHN's unreimbursed costs for product purchases and fees. The Arbitration Panel also found that AMC did not comply with the Franchise Agreement by not paying PHN the balance of the initial franchise fees and royalties. However, the panel denied recovery of these fees and royalties to the PHN Defendants and held that any sums paid by AMC to PHN for the franchise fees and royalties would be offset by the damages it awarded to AMC on its claim against the PHN Defendants for violating the Florida Deceptive and Unfair Trade Practices Act (FDUTPA), Fla. Stat. §§ 501.201–501.213 (West 2016). The panel then concluded that the PHN Defendants violated the FDUTPA and breached the Social Media Marketing Services Agreement.

The Arbitration Panel awarded $41,045.90 to AMC on its FDUTPA and breach of the Social Media Marketing Services Agreement claims and reduced

3

the amount by the $2,100.25 that the panel found was owed to PHN for product purchases and fees under the Franchise Agreement. As a result, the panel awarded AMC actual damages in the amount of $38,945.65, recoverable jointly and severally from the PHN Defendants. In February 2015, the Arbitration Panel issued a supplemental award concerning attorney's fees and costs, awarding AMC $90,150 in attorney's fees and $45,402 in costs, also recoverable jointly and severally from the PHN Defendants.

The PHN Defendants filed a motion to modify or vacate the Award in the trial court. They argued that the Award should be vacated or modified because the Arbitration Panel acted with "manifest disregard of the law," "exceeded their powers," or awarded damages on a matter not presented to them. Specifically, the PHN Defendants contended that the Arbitration Panel stated in the Award that the Adams Plaintiffs' tort claims would be governed by Texas law, yet when reviewing the Adams Plaintiffs' deceptive trade practices claims, the panel applied Florida law under the FDUTPA rather than Texas law under the DTPA.

The Adams Plaintiffs filed a response and motion to confirm the arbitration award. After a hearing on the competing motions, the trial court signed a judgment denying the PHN Defendants' motion and granting the Adams Plaintiffs' motion to confirm the award in the amount of $175,497.65.[2]

_____

[2]The parties do not address the $1,000 difference in the amount of the award ($174,497.65) and the amount confirmed in the trial court's judgment ($175,497.65).

4

## II.    Issues

In four issues, the PHN Defendants argue: (1) the Award should be vacated because the Arbitration Panel "exceeded their powers", (2) the Award should be vacated because the Arbitration Panel acted with "manifest disregard", (3) alternatively, the award should be modified because the Arbitration Panel acted on a matter not submitted to them, and (4) the award of attorney's fees and costs to AMC should be vacated and damages, attorney's fees, and costs should instead be awarded to the PHN Defendants.  In their reply brief, the PHN Defendants argue for the first time that the Award should be vacated because the Arbitration Panel failed to issue a "reasoned award."

## III.    Discussion

### A.    The Standard of Review for Vacating or Modifying Arbitration Awards Is Extraordinarily Narrow.

The parties agree that the FAA governs this case.  *See* 9 U.S.C.A. §§ 1–16.  Further, there is no dispute that Texas courts have jurisdiction to consider confirmation of an arbitration award under the FAA.  *See Banc of Am. Inv. Servs., Inc. v. Lancaster*, No. 2-06-314-CV, 2007 WL 2460277, at *3 (Tex. App.—Fort Worth Aug. 31, 2007, no pet.) (mem. op.); *see also Credigy Receivables, Inc. v. Mahinay*, 288 S.W.3d 565, 568 (Tex. App.—Houston [14th Dist.] 2009, no pet.).  We review de novo a trial court's order confirming, modifying, or vacating an arbitration award under the FAA.  *Banc of Am. Inv. Servs.*, 2007 WL 2460277, at *3 (citing *McIlroy v. PaineWebber, Inc.*, 989 F.2d

5

817, 819–20 (5th Cir. 1993)). This de novo standard is intended to give this court full power to give strong deference to the award. *See id.* An arbitration award has the same effect as a judgment of a court of last resort; accordingly, all reasonable presumptions are indulged in favor of the award and none against it. *CVN Grp., Inc. v. Delgado*, 95 S.W.3d 234, 238 (Tex. 2002). "A party seeking to vacate an arbitration award bears the burden of presenting a complete record that establishes grounds for vacatur." *Amoco D.T. Co. v. Occidental Petroleum Corp.*, 343 S.W.3d 837, 841 (Tex. App. —Houston [14th Dist.] 2011, pet. denied).

An arbitration award governed by the FAA must be confirmed unless it is vacated, modified, or corrected under certain limited grounds. *Id.*; *see Hughes Training, Inc. v. Cook*, 148 F. Supp. 2d 737, 742 (N.D. Tex.) ("[R]eview of an arbitration award is extraordinarily narrow under the FAA"), *aff'd*, 254 F.3d 588 (5th Cir. 2001), *cert. denied*, 534 U.S. 1172 (2002). In fact, this court's review is so limited that "we may not vacate an award even if it is based upon a mistake in law or fact." *Ancor Holdings, LLC v. Peterson, Goldman & Villani, Inc.*, 294 S.W.3d 818, 826 (Tex. App.—Dallas 2009, no pet.). Due to our deference to arbitration awards, judicial scrutiny focuses on the integrity of the process, not the propriety of the result. *Id.* (citing *Tuco, Inc. v. Burlington N. R.R. Co.*, 912 S.W.2d 311, 315 (Tex. App.—Amarillo 1995), *modified on other grounds*, 960 S.W.2d 629 (Tex. 1997)). "Ultimately, our review is a determination of whether the '[a]ward [is] so deficient that it warrant[s] sending the parties back to square one.'" *Howerton v. Wood*, No. 02-15-00327-CV, 2017 WL 710631, at

6

*3 (Tex. App.—Fort Worth Feb. 23, 2017, no pet. h.) (mem. op.) (quoting *Cat Charter, LLC v. Schurtenberger*, 646 F.3d 836, 842 (11th Cir. 2011)). "A party seeking to vacate an arbitration award bears the burden of presenting a complete record that establishes grounds for vacatur." *Amoco*, 343 S.W.3d at 841.

**B.    The Statutory Grounds for Vacating an Arbitration Award Under the FAA are Limited and Explicit.**

Section 10(a) of the FAA provides that a trial court may vacate an arbitration award upon the application of any party to the arbitration:

(1)  where the award was procured by corruption, fraud, or undue means;

(2)  where there was evident partiality or corruption in the arbitrators, or either of them;

(3)  where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or

(4)  where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

9 U.S.C.A. § 10(a)(1)–(4); *cf. Gilbert v. Rain & Hail Ins.*, No. 02-16-00277-CV, 2017 WL 710702, at *2 (Tex. App.—Fort Worth, Feb. 23, 2017, no. pet. h.) (mem. op.) ("An arbitration award governed by the FAA must be confirmed unless it is vacated, modified, or corrected under certain limited grounds.").

**C.** **Vacatur of the Award is not Warranted Under Section 10(a)(4) of the FAA Because the Arbitration Panel Did Not "Exceed its Powers."**

In their first issue, the PHN Defendants argue that the Arbitration Panel's finding of liability for the Adams Plaintiffs under the FDUTPA should be vacated under section 10(a)(4) because the panel "exceeded its powers." We disagree.

Arbitrators only exceed their power when they decide a matter not properly before them. *Banc of Am. Inv. Servs.*, 2007 WL 2460277, at *6 (citing *Barsness v. Scott*, 126 S.W.3d 232, 241 (Tex. App.—San Antonio 2003, pet. denied)); *accord Ancor Holdings, LLC*, 294 S.W.3d at 829. Arbitrators derive their authority from the arbitration agreement; therefore, an arbitrator's power and authority depend on the provisions under which the arbitrator was appointed. *See IQ Holdings, Inc. v. Villa D'Este Condo. Owner's Assoc., Inc.*, 509 S.W.3d 367, 373 (Tex. App.—Houston [1st Dist.] 2014, no pet.); *see also Glover v. IBP, Inc.*, 334 F.3d 471, 474 (5th Cir. 2003) ("To determine whether an arbitrator exceeded his powers, we must examine the language in the arbitration agreement."). Because the parties "bargained for the arbitrator's construction of their agreement, an arbitral decision even arguably construing or applying the contract must stand, regardless of a court's view of its demerits." *Oxford Health Plans LLC v. Sutter*, 133 S. Ct. 2064, 2068 (2013) (citations and internal quotation marks omitted). Moreover, an arbitration award may not be vacated under section 10(a)(4) of the FAA based on the arbitrator's errors in interpretation or application of the law or facts. *IQ Holdings, Inc.*, 509 S.W.3d at 373 (citing

*Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 671, 130 S. Ct. 1758, 1767 (2010) ("It is not enough for petitioners to show that the [arbitration] panel committed an error—or even a serious error.")). "It is only when [an] arbitrator strays from interpretation and application of the agreement and effectively dispense[s] his own brand of industrial justice that his decision may be unenforceable." *Stolt-Nielsen*, 559 U.S. at 671, 130 S. Ct. at 1767 (citation and quotation marks omitted).

Relying heavily on the Supreme Court's decision in *Stolt-Nielsen*, the PHN Defendants argue that the Arbitration Panel "exceeded its powers" by not following any choice of law theory or ignoring the choice of law theory it had determined governed in this case. Specifically, the PHN Defendants assert that the Arbitration Panel exceeded its powers by making a determination and analysis under both the DTPA and the FDUTPA, even though it had already determined that Texas law should apply to the Adams Plaintiffs' tort claims. In *Stolt-Nielsen*, the Supreme Court concluded that the arbitrator exceeded its powers and vacated an arbitration award because the arbitrator's award did not identify and apply a rule derived from the FAA or other applicable body of law; instead, it imposed its own policy choice and thus, exceeded its powers under the parties' arbitration agreement. *Id.* at 676–77, 130 S. Ct. at 1770.

However, *Stolt-Nielsen* is of no assistance to the PHN Defendants here. Under the terms of the Franchise Agreement, it appears the deceptive trade practices claims under both the Texas and Florida statutes could be submitted to

9

the Arbitration Panel, and the claims were actually submitted. The arbitration clause in the Franchise Agreement provides that if the parties have a dispute or claim "arising under or in connection with" the agreement, or the making, validity, performance, interpretation, breach, or termination of the agreement, including claims of fraud or fraud in the inducement, the parties would first attempt to negotiate in good faith to resolve the dispute. If negotiations did not settle the dispute, the parties agreed to go to mediation. If mediation did not solve the dispute, it would be submitted to binding arbitration. Accordingly, under the arbitration clause, the Arbitration Panel had the authority to settle the deceptive trade claims under both the Texas and Florida statutes because these claims "arose under or in connection with" the Franchise Agreement.

Further, in their Statement of Claims provided to the Arbitration Panel in their presubmission brief, the Adams Plaintiffs asserted that the PHN Defendants' actions violated both the DTPA and the FDUTPA. In their posthearing brief, the Adams Plaintiffs asserted that the DTPA applied under the choice of law analysis, but they also asserted that the PHN Defendants' acts were per se violations of the FDUTPA. The Adams Plaintiffs therefore submitted their FDUTPA claim to the arbitrators, and the panel did not decide a matter not before them in ruling on the deceptive trade claim by applying the Florida version of the law. In the end, the appropriate inquiry is not whether the Arbitration Panel decided an issue correctly, but instead whether it had the authority to decide the issue at all. *D.R. Horton-Tex., Ltd. v. Bernhard*, 423 S.W.3d 532, 534 (Tex.

10

App.—Houston [14th Dist.] 2014, pet. denied); *see Ancor Holdings, LLC.*, 294 S.W.3d at 830 ("Thus, improvident, even silly interpretations by arbitrators usually survive judicial challenges.") (citations and internal quotation marks omitted).  The Arbitration Panel did not exceed its powers.

We overrule the PHN Defendants' first issue.

**D.** **"Manifest Disregard" of the Law Is Not a Ground for Vacatur of the Award Under the FAA.**

The PHN Defendants argue in their second issue that they were entitled to have the Arbitration Panel's decision vacated, either independently or as a "judicial gloss" to the statutory grounds for vacatur under the FAA, because the Arbitration Panel "manifestly disregarded" the law.  We disagree.

The use of the doctrine of "manifest disregard" as a basis for vacating or modifying arbitration awards had its genesis in *Wilko v. Swan*, a 1953 Supreme Court decision where the Court found that "the interpretations of the law by the arbitrators in contrast to manifest disregard are not subject, in the federal courts, to judicial review for error in interpretation."  346 U.S. 427, 436–37, 440, 74 S. Ct. 182, 187–88, 190 (1953), *overruled on other grounds by Rodriguez de Quijas v. Shearson/Am. Exp., Inc.*, 490 U.S. 477, 109 S. Ct. 1917 (1989); *see Burchell v. Marsh*, 58 U.S. (17 How.) 344, 349 (1854) (applying common law arbitration principles and stating that "[i]f an award is within the submission, and contains the honest decision of the arbitrators, after a full and fair hearing of the parties, a court of equity will not set it aside for error, either in law or fact").

In 2008, the Supreme Court recognized that its language in *Wilko* was vague: "Maybe the term 'manifest disregard' was meant to name a new ground for review, but maybe it merely referred to the § 10 grounds collectively, rather than adding to them." *Hall Street Assocs., L.L.C. v. Mattel, Inc.*, 552 U.S. 576, 585, 128 S. Ct. 1396, 1404 (2008). The Court then held that under the FAA, an arbitrator's decision may be vacated only under one of the four statutory grounds set out in 9 U.S.C.A. § 10. *Id.* at 591, 128 S. Ct. at 1407. After *Hall*, but prior to *Stolt-Nielsen*, the Fifth Circuit said that in light of *Hall*, "[t]o the extent that our previous precedent holds that nonstatutory grounds may support the vacatur of an arbitration award, it is hereby overruled." *Citigroup Glob. Mkts., Inc. v. Bacon*, 562 F.3d 349, 358 (5th Cir. 2009).

The PHN Defendants urge the court to disregard *Hall* and *Citigroup* and argue that *Stolt-Nielsen* "made it clear that the doctrine of 'manifest disregard' [is] not dead." In support of this proposition, the PHN Defendants cite to a footnote in *Stolt-Nielsen* where the Supreme Court stated in dicta that it was not deciding whether "manifest disregard" survives its decision in *Hall* as an independent ground for review or a ground for vacatur set forth in the FAA. *See Stolt-Nielsen*, 559 U.S. at 671, n.3, 130 S. Ct. at 1768, n.3. In *Shaw Constructors, Inc. v. HPD, LLC*, a federal district court examined this footnote and found that the "Fifth Circuit has not responded to *Stolt-Nielsen* and therefore [*Citigroup's*] refusal to recognize 'manifest disregard' as a separate ground for vacatur remains the rule in [the Fifth] Circuit." 749 F. Supp. 2d 474, 479 (E.D. La. 2010). We agree and

12

conclude that the holding in *Citigroup* is persuasive and that the Supreme Court in *Hall* made it clear that sections 10 and 11 contain the exclusive and explicit grounds for vacating or modifying an arbitration award under the FAA.

Likewise, the Fifth Circuit has at least twice recognized that *Citigroup* removes manifest disregard as a potential independent nonstatutory ground for vacatur under the FAA. *See OMG, L.P. v. Heritage Auctions, Inc.*, 612 Fed. Appx. 207, 209–10 (5th Cir.) (finding that the FAA "constrains federal courts to a narrow review of arbitration awards" and recognizing that *Citigroup* precludes treating "manifest disregard of law" as an independent ground for vacatur), *cert. denied*, 136 S. Ct. 503 (2015); *McVay v. Halliburton Energy Servs., Inc.*, 608 Fed. Appx. 222, 225 (5th Cir. 2015) (same); *see also McKool Smith, P.C. v. Curtis Int'l Ltd.*, No. 3-15-CV-01685-M, 2015 WL 5999654, at *5 (N.D. Tex. Oct. 14, 2015) (citing *CitiGroup* and stating that "the Fifth Circuit has explicitly held that manifest disregard of the law is no longer a valid ground for vacatur"), *aff'd*, 650 Fed. Appx. 208, 211, 212 (5th Cir. 2016) (citing *CitiGroup* for the proposition that "the . . . statutory grounds are the exclusive means for vacatur under the FAA" and "[a]ssuming—without deciding—that manifest disregard of the law . . . fall[s] within 9 U.S.C. § 10(a)(4)").[3]

---

[3]Citing *ConocoPhillips, Inc. v. Local 13-0555 United Steelworkers Int'l Union*, 741 F.3d 627, 630 (5th Cir. 2014), the PHN Defendants make the bold assertion that "the Fifth Circuit now recognizes manifest disregard." A close review of *ConocoPhillips* shows that the PHN Defendants are stretching dicta and severely misstating the court's holding.

Similarly, this court has recently impliedly recognized that manifest disregard does not exist as a ground for vacatur under the FAA. *See Gilbert*, 2017 WL 710702, at *2 (stating "[a]n FAA award can be vacated *only*" for one of the four statutory enumerated bases set forth in Section 10(a) of the FAA) (emphasis added). Moreover, several of our sister courts of appeal have held either that "manifest disregard" does not exist as a ground for vacating an FAA arbitration award or that the four grounds explicitly listed in Section 10(a) are the only grounds for vacating an FAA arbitration award. *See, e.g.*, *Casa Del Mar Ass'n, Inc. v. Williams & Thomas, L.P.*, 476 S.W.3d 96, 100–01 (Tex. App.—Houston [14th Dist.] 2015, no pet.) (holding trial court did not err by denying motion to vacate under the FAA based on the "manifest disregard" doctrine); *Venture Cotton Coop. v. Neudorf*, No. 14-13-00808-CV, 2014 WL 4557765, at *3 (Tex. App.—Houston [14th Dist.] Sept. 16, 2014, no pet.) (mem. op.) ("The bases for vacatur in section 10 [of the FAA] are exclusive."); *IQ Holdings, Inc.*, 509 S.W.3d at 376 (holding that *Hall* "forecloses" claim that an arbitration award can be vacated under the common-law doctrine of manifest disregard of the

___

Although *ConocoPhillips* did cite *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 942, 115 S. Ct. 1920, 1923 (1995), for the general proposition that a court will vacate an arbitration award only in unusual circumstances, "such as fraud, manifest disregard of the law, corruption, undue means, and the arbitrator overstepping its powers," *Kaplan* predated *Hall*, *Stoltz-Nielson*, and *Citigroup*. *ConocoPhillips*, 741 F.3d at 630. Moreover, *ConocoPhillips* did not examine whether "manifest disregard" continues to exist as a ground for vacatur under the FAA, nor did the court base its ultimate decision on that doctrine. *See id.* at 630–34 (stating that the "primary issue on appeal is . . . 'who has the power to decide whether an issue is arbitrable'").

14

law); *Good Times Stores, Inc. v. Macias*, 355 S.W.3d 240, 244 (Tex. App.—El Paso 2011, pet. denied) ("The bases for vacatur in Section 10 of the FAA are exclusive."), *cert. denied*, 132 S. Ct. 2398 (2012); *Ancor Holdings, LLC*, 294 S.W.3d at 828–29 (concluding that under *Citigroup* and *Hall Street*, "manifest disregard" does not exist as a ground for vacating FAA award); *accord Hoskins v. Hoskins*, 497 S.W.3d 490, 497 (Tex. 2016) (holding under the Texas Arbitration Act (TAA), statutory grounds are the only grounds for vacating an arbitrator's decision).[4]

We overrule the PHN Defendants' second issue.

### E. Modification of the Award is Not Warranted Under Section 11(b) of the FAA.

In their third issue, the PHN Defendants alternatively contend that the Award should be modified under 9 U.S.C.A. § 11(b) because the application of the FDUTPA was not "submitted" to the panel at the time of the hearing and was not, therefore, a matter in dispute. Section 11(b) of the FAA states that an arbitration award may be modified "[w]here the arbitrators have awarded upon a matter not submitted to them, unless it is a matter not affecting the merits of the decision upon the matter submitted." 9 U.S.C.A. § 11; *see IQ Holdings, Inc.*, 509 S.W.3d at 373 ("[F]or modification or correction to be appropriate under

---

[4]In his concurrence in *Hoskins*, Justice Willett made clear that under the TAA there are: "[n]o glosses on those statutory bases, no smuggling common law in through the back door—and no judicial intermeddling with the Legislature's carefully circumscribed bases for judicial review of an arbitration award. Exclusive means exclusive." 497 S.W.3d at 500.

either the FAA or TAA, the arbitrator must have awarded on a matter that the parties did not agree to submit to her."). Here, the Adams Plaintiffs raised the FDUTPA as an alternative to the DTPA in both their pre- and post-submission briefs. Thus, the subject matter was submitted to the Arbitration Panel, and there is no basis for modification of the Award under section 11(b). *Cf. Rosati v. Bekhor*, 167 F. Supp. 2d 1340, 1345 (M.D. Fla. 2001) (The trial court refused to modify an arbitration award and held that "the general *issue* submitted to the arbitration panel was securities fraud[, and, w]hile the specific law mentioned in the [a]ward was not submitted to the arbitrators, the issue of securities fraud was submitted.").

We overrule the PHN Defendants' third issue.

**F. Vacatur or Modification of the Award to Exclude the Award of Attorney's Fees and Costs to the Adams Plaintiffs is Not Warranted.**

The PHN Defendants argue under their fourth issue that because the award of damages to the Adams Plaintiffs must be vacated or modified, the award for attorney's fees must also be vacated, and damages, fees, and costs should instead be awarded to the PHN Defendants. Further, the PHN Defendants argue that the Arbitration Panel mistakenly found that AMC was the prevailing party because even though AMC ultimately won on only two of its ten claims in arbitration, the PHN Defendants prevailed on eight of their ten claims. These assertions are without merit.

16

While all the parties emerged from arbitration winning less than they had hoped, the Arbitration Panel concluded that AMC was the "prevailing party." We determine that there was no error in the trial court's confirmation of the Award and its implicit agreement with the Arbitration Panel's finding that the PHN Defendants were not the "prevailing parties" and thus not entitled to attorney's fees and costs.

We overrule the PHN Defendants' fourth issue.

**G. The PHN Defendants Waived Their Argument that the Arbitration Award Should be Vacated Because it was Not a "Reasoned Award."**

In their reply brief, the PHN Defendants argue for the first time on appeal that the Award must be vacated because the Arbitration Panel did not issue a "reasoned award." They contend that they may raise this argument for the first time for two reasons. First, they contend that the argument was raised in response to the Adams Plaintiffs' assertion that they did not meet their burden to show that the Arbitration Panel manifestly disregarded the law; the PHN Defendants say this assertion opens the door for them to argue that the panel failed to issue a reasoned award. Second, they contend that their reply argument regarding the absence of a "reasoned award" relates to the issue presented in their original brief where they contended that the Arbitration Panel "exceeded its authority." *But see TiVo, Inc. v. Goldwasser*, 560 Fed. App. 15, 21 (2d Cir. 2014) (holding argument that arbitration panel exceeded authority

17

because panel's reasoning "did not wholly track the parties' arguments" was meritless). We disagree.

The argument that we should set aside the Award because it was not "reasoned" was not an issue or submission fairly raised in the PHN Defendants' opening brief and cannot be characterized as merely a response to the Adams Plaintiffs' brief. It is a wholly separate and new ground for setting aside the Award, which may not be raised for the first time in a reply brief. *See Miller v. El Campo Holdings, LLC*, No. 02-15-00388-CV, 2017 WL 370936, at *4 (Tex. App.—Fort Worth Jan. 26, 2017, no pet.) (mem. op.); *see also Stovall & Assocs. v. Hibbs Fin. Ctr., Ltd.*, 409 S.W.3d 790, 803 (Tex. App.—Dallas 2013, no pet.) ("That Stovall could have but did not make such an argument in its opening brief does not allow it to do so for the first time in its reply brief."); *Miner Dederick Constr., LLP v. Gulf Chem. & Metallurgical Corp.*, 403 S.W.3d 451, 463 n.3 (Tex. App.—Houston [1st Dist.] 2013) (op. on reh'g) ("[T]he rules of appellate procedure do not allow an appellant to include in a reply brief a new issue in response to some matter pointed out in the appellee's brief but not raised in the appellant's opening brief."), *pet. denied*, 455 S.W.3d 164 (Tex. 2015).

We hold that this argument was waived.

## IV. Conclusion

Having overruled or held that the PHN Defendants waived their complaints, we affirm the trial court's judgment.

18

/s/ Mark T. Pittman
MARK T. PITTMAN
JUSTICE

PANEL:  WALKER, GABRIEL, and PITTMAN, JJ.

DELIVERED:  April 20, 2017